# MARVIN ALOYSIUS NUTT *v.* STATE OF MARYLAND

[No. 192, September Term, 1972.]

*Decided January 29, 1973.*

696

The cause was argued before ORTH, C. J., and MOYLAN and MENCHINE, JJ.

*Thomas Ward* for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, J. Thomas Caskey, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Domenic R. Iamele, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Marvin Aloysius Nutt was tried before Judge Basil A. Thomas in the Criminal Court of Baltimore, under indictments 2902, 2903 and 2904/1971.

Under indictment 2902 (6 counts) defendant was found guilty under count one, possession of heroin with the intent to manufacture or distribute; count three, possession of cocaine with intent to manufacture or distribute; count five, possession of controlled paraphernalia, and count six, possession of other controlled paraphernalia. Count two was merged in count one; count four was merged in count three. He was sentenced to ten years confinement under count one, with concurrent sentences of the same or lesser terms under counts three, five and six. Under indictment 2903 defendant was found guilty of possession of marijuana. The one year sentence was concurrent with sentence in 2902. Under indictment

2904 defendant was found guilty of maintaining a common nuisance. The one year sentence was concurrent with sentence in 2902.

This appeal mounts a dual attack: (a) upon use of evidence alleged to have been seized by unlawful search, and (b) upon the legal sufficiency of the evidence to convict under any count of all indictments.

### Search and Seizure

In the first prong of attack upon the search and seizure, appellant seeks reversal upon the ground that neither the original warrant and affidavit, nor copies thereof were admitted in evidence and the error was compounded by failure to incorporate either within the original record on appeal.

It is true that neither the original warrant and affidavit, nor copies thereof were incorporated within the record transmitted to this Court. We have held that it is the responsibility of the appellant to include in the record all matters and issues he desires this Court to review on appeal. *Gray v. State,* 10 Md. App. 478, 488, 271 A. 2d 390, 397. However, the record showed that documents purporting to be copies of the warrant and affidavit were presented to, examined by and ruled upon by the trial judge on appellant's motion to suppress. The record also showed that testimony was taken as to the whereabouts of the missing originals; the nature of the search for the same; and the authenticity of the copies. Under this circumstance, and because the substantive evidence offered in the case dealt solely with contraband seized under the warrant, this Court, acting *sua sponte,* directed the Clerk to obtain the documents, have the same certified by the trial judge as the documents ruled upon by him, and to incorporate the same in the record. This has been accomplished.

At the conclusion of the testimony on the motion to suppress the State offered the carbon copies now in the

record, and arguments of counsel covering nine pages of the transcript were had and recorded.

At the conclusion of the arguments of counsel, the trial judge then said at page 49 of the transcript:

"First of all, let me say I am satisfied that the original warrant and return was not intentionally lost, or destroyed, by the State in this case, or by the Police Department. And further I am further satisfied that the copy, based on the police officer's testimony, is an accurate duplicate or carbon of the contents of the original warrant, although it lacks several things. It lacks the date, it lacks the signature of the affiant, and signature of the Judge. It also lacks information regarding the return. I am satisfied from the officer's testimony that he was the affiant, and I am satisfied from the officer's testimony that Judge Finnerty did sign the warrant. I am satisfied from the officer's testimony that the warrant was executed; I am satisfied from the officer's testimony that the warrant was returned to Judge Finnerty under the circumstances, and I am also satisfied that the officer has checked his own file, and according to his testimony did check the file of the Clerk of the Criminal Court of Baltimore City, where returns are supposed to be sent, and although he personally only checked this morning the records of the Chief Clerk of the District Court, and said that he spent an hour and a half searching those records, wasn't able to find any, I am satisfied that the loss has been sufficiently established to warrant the admissibility of the secondary evidence, and therefore the objection to the introduction is overruled."

It is plain from the above that the absence of the copy of the warrant and of the affidavit as exhibits at the

most is a clerical misprision. Maryland Rule 1027 a authorizes this Court to direct by order that "an error in the record shall be corrected and an omission in the record supplied." The absence of the copy of the warrant and affidavit from the original record is not cause for reversal in the light of the trial court's certification that the documents now before us, are, in fact, the documents presented to, examined by and ruled upon by him on appellant's motion to suppress.

We turn, then, to the question whether sufficient showing was made that the original documents were lost, and whether the proffered copies were admissible as secondary evidence of the same. The general rule that the contents of documents may be furnished by secondary evidence when the originals have been lost or destroyed, is firmly established in this State. It was held applicable to search warrant cases in *Anderson v. State,* 9 Md. App. 532, 539, 267 A. 2d 296, wherein it was also made clear: "* * * that whether or not the loss has been sufficiently established to warrant the admissibility of the secondary evidence is largely in the discretion of the trial court; * * *."

We have previously recited the findings of fact by, and the rulings of the trial judge with respect to both questions. It would seem to serve no useful purpose here to recite at length the testimony presented upon the questions, beyond the statement that a witness, one of two affiants to the application and affidavit for the original warrant, gave testimony that both affiants personally were sworn by Judge Finnerty of the District Court on July 9 and made oath as to the matters contained in the affidavit; that the judge issued the warrant; that he became aware of the missing document about thirty days before trial when summoned to appear at trial; that he searched all files of his Squad, the records of the Criminal Court of Baltimore City, where warrants including warrants issued by District Court judges habitually are kept, and the Clerk's office of the District Court—all without

finding the missing documents. The only other evidence about the missing documents was a stipulation that inquiry to Judge Finnerty disclosed that the judge did not remember whether he signed the warrant on July 9th, and did not recollect the warrant itself. The witness also testified that the copies presented to the court were made in the regular course of police business; were taken from the Narcotics Squad file; were identical in every respect to the original warrant and affidavit and that all blanks were complete in the original.

Appellant suggests that the case falls within *Campofreda v. State,* 15 Md. App. 693, 292 A. 2d 703. *Campofreda* did not depart in any respect from the decision in *Anderson, supra,* as clearly appears when, after announcing required reversal, this Court said at page 702: "It may well be that on a retrial of this case the State will produce the original warrant, or the "copy" made sufficient by other secondary evidence." *Campofreda* obviously differs from the subject case on its facts. There, the original warrant was not shown to be lost, nor the copy observed by the trial judge authenticated in any respect.

It thus appears here, as was the case in *Anderson, supra,* that there was evidence to support the trial court's conclusion that the original warrant and affidavit were not intentionally lost; that there was an adequate search for their discovery and that the copies were sufficiently authenticated to establish the contents of the original. We see no abuse of discretion by the trial judge in admission of the copies as secondary evidence of the warrant and affidavit.

It has been declared in decisions almost beyond enumeration that a judge may issue a search warrant when presented with an application and affidavit giving him probable cause for the search. Examples are: *U. S. v. Ventresca,* 380 U. S. 102; *Buckner v. State,* 11 Md. App. 55, 272 A. 2d 828; *Hudson v. State,* 16 Md. App. 49, 294 A. 2d 109, and cases therein cited.

702

The manner by which such probable cause may be shown was lucidly stated in *Moore v. State*, 13 Md. App. 711, 715, 284 A. 2d 614, 616:

> "Thus probable cause may be shown in the affidavit by a statement by the affiant 1) of his direct observations, or 2) of information furnished the affiant by someone else, named or unnamed, or 3) of a combination of the direct observations of the affiant and hearsay information furnished him. In each instance the issuing judge must have before him enough circumstances to enable him to determine the trustworthiness of the information, for he must not only evaluate the adequacy to show probable cause of the facts and circumstances set out in the affidavit but he must also evaluate the truthfulness of the source of the information comprising those facts and circumstances. Due to the infinite variety of human conduct, the sufficiency of any affidavit must necessarily depend upon the particular facts and circumstances in it contained."

We pass, then, to the question whether probable cause for the issue of the warrant was shown.

It will be observed that the affiants seeking the issue of the warrant disclosed to the issuing judge "some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were" (that informant personally had purchased narcotics from the named individual at the place sought to be searched), as well as "some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable.'" (That informant had previously given accurate information: resulting in the arrest of thirty-two persons for narcotics violations, including three major violators;

the seizure of a significant quantity of controlled dangerous substances; the conviction of two for narcotic violations.) See *Aguilar v. Texas*, 378 U. S. 108, 114.

The affiants, moreover, disclosed considerably more data to the issuing judge. Their affidavit disclosed that after the foregoing information had been received from the informant they inquired whether he would be willing to make a purchase at the location from the individual named as the seller of narcotics and received an affirmative answer. Thereupon, the affiants made oath, that the informant was taken to the scene; that it was determined by search that he was without funds or narcotics; that they gave informant money with which to buy narcotics; that they saw him enter the building wherein the apartment proposed to be searched was located; that they saw him emerge from the building within three minutes; that they immediately conducted a search of his person, disclosing that the money was gone, but he was possessed of a substance that tests conducted by the affiants revealed to be heroin.

Thus, independent investigation by the affiants themselves disclosed to the issuing judge further evidence that gave added weight not only to the reliability and credibility of their undisclosed informant, but also gave added weight to the conclusion that narcotics likely would be found at the place sought to be searched.

We are persuaded that the totality of allegations in this affidavit submitted to "a neutral and detached magistrate instead of being judged by the officer" himself (*Johnson v. U. S.*, 333 U. S. 10, 14) clearly were "sufficient to justify a prudent or cautious man in believing that acts in violation of the narcotics laws were being committed" in the apartment. *Hudson, supra,* page 60. Compare: *U. S. v. Harris*, 403 U. S. 573.

Appellant's motion to suppress the evidence properly was denied.

## Sufficiency of Evidence

### (General Possession of Narcotics)

Acting under the warrant, a one room and hallway apartment at 900 Stricker Street was subjected to search on July 9, 1971, at 10:30 p.m. The appellant and one Angeline Beverly were within the apartment. The furnishings consisted of a bed, a dresser, several chairs, an end table and closet. Some pictures were hanging on the walls.

The search disclosed:

A bag containing fifteen tinfoil packets of codeine hydrochloride found inside a picture hanging on the wall. (Exhibit 1)

A manila envelope containing heroin found inside a second picture. (Exhibit 2)

Ten glassine bags and five empty pink capsules of a type used to package and distribute cocaine or heroin. (Exhibit 3)

One brown paper bag containing an empty glassine bag, two burnt bottle top caps with residue, three hypodermic syringes, and three needles, four needle covers, one improvised syringe and one copper wire—all described as used to inject heroin. (Exhibit 4)

Forty five glassine bags containing heroin were found in one of the pockets of a man's blue sport coat hanging in the apartment hall closet; seven tinfoil packets of cocaine were found in another pocket of the same garment. (Exhibit 6a, b, c and d)

Twenty four manila envelopes of the kind used to package and distribute marijuana and heroin were also found in the closet. (Exhibit 7)

An envelope from the Baltimore Department of Social Services, addressed to "Mr. Marvin Nutt, 900 Stricker Street, Baltimore, Maryland." (Exhibit 8b)

An employment card issued by the Maryland Department of Employment Services bearing the name of Marvin Nutt and the address 900 N. Stricker Street, also was found (Exhibit 8b) In a dresser drawer a letter from a utility corporation to the appellant dated December 10, 1970, and addressed to 1923 W. Mosher Street was found.

Also found within the apartment was a letter addressed to Angeline Beverly, 900 Stricker Street, from the Baltimore Department of Social Services and a postcard addressed to Charles Briscoe, 900 N. Stricker Street. No explanation for either was made.

The defendant was a heroin addict with a daily habit of five bags. The woman on the premises at the time of search, also an addict, had a habit of two bags daily. No narcotics were taken from the physical possession of the appellant.

In *Henson v. State,* 236 Md. 518, 524, 204 A. 2d 516, 520, it was said:

"That the narcotics were not on [accused's] person but only in the house of which he was a resident did not prevent the inference the * * * trial court drew—that he had possession and control of narcotics—from properly and permissibly being drawn.

Possession and control need not be immediate and direct but may be constructive."

The existence of constructive possession *vel non* has been given consideration by this Court in a great many cases. Some of those cases, deciding that the evidence established constructive possession by an accused are factually quite similar to the subject case.

Thus, in *Broadway v. State,* 3 Md. App. 164, 237 A. 2d 820, evidence that narcotics were found on the floor about one foot from the accused, with additional narcotics found in a coat in a closet in the room, was held

to permit the inference, drawn by the trial judge, that accused was the possessor, although only a visitor and although other lawful occupants also were present.

Again, in *Munger v. State,* 7 Md. App. 710, 256 A. 2d 888, constructive possession by the accused was held established as to the tenant of the premises wherein narcotics were found, even though another person was hiding under a bed when search occurred.

In *Folk v. State,* 11 Md. App. 508, 275 A. 2d 184, we reviewed on the sufficiency of the evidence, convictions of defendants not shown to have been in direct physical possession or control of contraband drugs, but who were held to be in constructive possession of them. In the course of that review it was observed by this Court at page 518:

> "The common thread running through all of these cases affirming joint possession is 1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband."

In the subject case that common thread also clearly appears. Proximity between the appellant and the contraband is shown. Substantial quantities of the contraband were found in the pockets of the only male garment within the small apartment. Needle marks were observed upon the arm of the appellant, as well as on the arm of the other person. Ownership or possessory right of appellant in the premises is implicit in the evidence. He was found upon the premises at 10:30 p.m. A letter and an employment card bearing the name and address of

the appellant were found in the apartment. The letter addressed to appellant at a different address but postmarked more than six months prior to the search, tends to strengthen, rather than weaken, a permissible inference of current residency of the appellant in the searched premises. The unexplained letter addressed to another does not destroy that permissible inference.

From the totality of these circumstances, the trial judge found the appellant to be in constructive possession of the contraband. We cannot say that he was clearly wrong. *Graybeal v. State*, 13 Md. App. 557, 284 A. 2d 37; *Jason, Johnson & Moore v. State*, 9 Md. App. 102, 262 A. 2d 774.

### *Possession as Applied to Particular Indictments*
### Indictment No. 2902
### Count 1 and Count 3

The evidence shows constructive possession by the appellant of (a) forty five packets of heroin; (b) manila envelope containing heroin; (c) multiple instruments to accomplish injection of heroin; (d) multiple containers for distribution of heroin; (e) fifteen packets containing codeine hydrochloride, and (f) seven packets containing cocaine hydrochloride. These quantities are sufficient to permit the trial judge to draw a justifiable inference that appellant possessed both heroin and cocaine in sufficient quantity as reasonably to indicate under all of the circumstances an intent to distribute the same and thus to justify the conclusion that appellant was guilty under the first and third counts beyond a reasonable doubt.

The diversity of the narcotics and equipment found on the premises provides a further base for such inference and conclusion. Article 27, § 286 (a) (1); *Williams v. State,* 14 Md. App. 619, 625, 287 A. 2d 803, 807. The trial judge was not required to accept the inference that the narcotics were to be used solely for the habit of the two addicts.

## Count 5

Exhibits 3 and 4 supplied the evidence to support this count of the indictment.

## Count 6

This count of the indictment is duplicitous of Count 5 and the judgment entered therein will be vacated.

## Indictment No. 2903

There was no evidence that the accused possessed marijuana. The judgment under that indictment must be reversed and remanded for a new trial.

## Indictment No. 2904

## (Common Nuisance)

The evidence in the subject case at the substantive trial was limited exclusively to the introduction of articles seized at the time of search and testimony or stipulation as to their description, use and, as to some, their chemical properties. There was no evidence that the premises had been utilized in offenses of a continuing or recurring character.

In *Skinner v. State,* 16 Md. App. 116, 293 A. 2d 828, we pointed out that although we had implied,[1] we had never decided,[2] that a recurrent or continuing character of the offense was a necessary element of the crime. We then said in *Skinner*: (P. 125) "* * * we here make explicit what is already implicit in our decisions * * *" and (P. 128) "The recurring nature of the offense being an element of the crime under Section 286 (a) (5), the proof in the case at bar of a single day's violation was legally insufficient to permit the case to go to the jury."

---

1. *Berlin v. State,* 12 Md. App. 48, 277 A. 2d 468; *Kane v. State,* 12 Md. App. 466, 280 A. 2d 9.
2. *Killie v. State,* 14 Md. App. 465, 287 A. 2d 310.

The judgment in Indictment No. 2904 must be reversed and remanded for a new trial.

> *Judgments under Count 1, Count 3 and Count 5 in Case 2902 affirmed. Judgment under Count 6 in Case 2902 vacated as duplicitous of Count 5.*
> *Judgment in Cases 2903 and 2904 reversed and remanded for a new trial.*