[No. S149890. Dec. 29, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY ANDREW GALLAND, Defendant and Appellant.

### Counsel

Jackie Menaster, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Holley A. Hoffman, Maxine P. Cutler, Stephen T. Oetting, Gil Gonzalez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BAXTER, J.**—In this case, City of Buena Park police obtained a warrant to search defendant's home, vehicle, and person for methamphetamine and evidence of methamphetamine sales. After the warrant was executed, a portion of the search warrant affidavit was ordered sealed to protect the identity and safety of one or more confidential informants. The magistrate ordered that this portion of the affidavit be secured in the Buena Park Police Department property room. The sealed affidavit was subsequently brought to court to enable the Orange County Superior Court to rule on defendant's motions under Penal Code section 1538.5 to quash and traverse the warrant and to suppress the evidence. The motions were denied, and the original sealed portion of the affidavit was returned to police custody.

When defendant appealed the ruling, the Court of Appeal discovered that the police department had purged its files of the original sealed portion of the affidavit. The Court of Appeal declared that the magistrate's order concerning the custody of the affidavit was unsupported by any authority and held instead that the Penal Code required the magistrate "to retain the entire search warrant affidavit when the warrant is issued or at the time the return is filed." The Court of Appeal reasoned further that the remaining record was inadequate to permit meaningful appellate review and therefore reversed the denial of defendant's motions to quash and traverse the warrant and to suppress the evidence seized under the warrant, even though the superior court had determined, as a matter of fact, that a substitute five-page document provided by the Orange County District Attorney's Office was an unsigned version of the same warrant affidavit that had been provided to the magistrate.

We agree the magistrate erred in directing that the original sealed portion of the affidavit be retained by the police department, but not for the reasons stated by the Court of Appeal. A sealed affidavit in support of a search warrant may be retained by the requesting law enforcement agency only upon a showing (1) that disclosure of the information would impair further investigation of criminal conduct or endanger the safety of the confidential informant or the informant's family; (2) that security procedures at the court clerk's office governing a sealed search warrant affidavit are inadequate to protect the affidavit against disclosure to unauthorized persons; (3) that security procedures at the law enforcement agency or other entity are sufficient to protect the affidavit against disclosure to unauthorized persons; (4) that the law enforcement agency or other entity has procedures to ensure that the affidavit is retained for 10 years after final disposition of the noncapital case, permanently in a capital case, or until further order of the court (see Gov. Code, § 68152, subd. (j)(18)), so as to protect the defendant's right to meaningful judicial review; and (5) that the magistrate has made a

sufficient record of the documents that were reviewed, including the sealed materials, so as to permit identification of the original sealed affidavit in future proceedings or to permit reconstruction of the affidavit, if necessary. Because the People failed to make such a showing here, the magistrate erred in allowing the original sealed portion of the affidavit to be retained by the police department.

We further find, however, that the Court of Appeal was mistaken in concluding that the magistrate's error, and the subsequent loss of the original sealed search warrant affidavit, rendered it impossible to safeguard defendant's right to meaningful appellate review. Although the original affidavit has been lost, the superior court determined that the five-page unsigned document submitted by the district attorney's office in its place was otherwise identical to the affidavit the superior court had reviewed prior to denying defendant's motion to suppress, and that factual finding is supported by substantial evidence. Moreover, subsequent to the Court of Appeal's decision, the Orange County Superior Court discovered a copy of the original sealed search warrant affidavit in its files. Accordingly, we reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

## BACKGROUND

We take our facts largely from the prior Court of Appeal opinions arising from defendant's criminal conviction.

On August 9, 2001, Judge Daniel B. McNerney issued a search warrant for defendant Anthony Andrew Galland's home, vehicle, and person. The warrant was supported by Buena Park Police Detective David Hankins's affidavit of probable cause that methamphetamine and items tending to establish sales of methamphetamine would be found there and was executed during the evening hours of August 9. Defendant was arrested after methamphetamine was found on his person and in the trunk of his vehicle. The police subsequently found methamphetamine and marijuana, evidence of drug sales activities, and guns in defendant's mobilehome.

Eight days later, Hankins appeared before Judge James P. Marion with the original search warrant, warrant affidavit, return, and property report. Hankins requested an order sealing the portion of the search warrant affidavit that contained the probable cause showing in order to protect the identity of a confidential informant, relying on the holding in *People v. Hobbs* (1994) 7 Cal.4th 948 [30 Cal.Rptr.2d 651, 873 P.2d 1246] (*Hobbs*). Hankins further requested that the sealed portion of the warrant be secured in the Buena Park Police Department property room. Judge Marion signed the order.

Hankins filed the sealed search warrant, return, and property report with the clerk of the superior court, but retained the sealed portion of the original warrant affidavit and transported this sealed document to the Buena Park Police Department for storage in its property room. The partial search warrant affidavit filed with the court included Hankins's training and experience but did not identify the basis for his belief that a search of defendant's home, person, and property would reveal evidence of a crime. The portion retained by Hankins contained the facts necessary to establish probable cause for the search. Sometime later, for reasons not disclosed in the record, the court ordered the search warrant, partial affidavit, return, and property report in its possession to be unsealed and available to defendant's attorney.

In June 2002, defendant filed motions to quash and traverse the search warrant and to suppress evidence seized as a result of the search. He challenged the validity of the warrant on numerous grounds, including the fact that Hankins had failed to file the complete original search warrant affidavit or a copy in the court file. Defendant requested the trial court conduct an in camera review of the entire warrant affidavit to determine whether it contained probable cause and whether any of the sealed affidavit could be disclosed without jeopardizing the identity of the confidential informant. The prosecution opposed the motion, arguing that no legal authority required the issuing magistrate to retain the original warrant affidavit while the search warrant was executed and, in the alternative, that suppression of the evidence would not be a proper remedy, assuming a violation of proper procedure.

On August 2, 2002, Judge Robert R. Fitzgerald held an evidentiary hearing on defendant's motions. Defendant orally renewed his request for an in camera review of the sealed portion of the warrant affidavit. Judge Fitzgerald did not rule on defendant's request for in camera review, but proceeded to conduct an evidentiary hearing on a knock-notice issue raised by the defense. At the conclusion of the evidentiary hearing, Judge Fitzgerald ruled as follows: "Discrepancy in the testimony is resolved in favor of law enforcement as opposed to a convicted criminal defendant in the same case. [¶] In that regard the motion in its entirety, unless there's other argument shall be denied. And that concludes our 1538.5." Defense counsel again requested an in camera review of the warrant affidavit or a continuance to file the appropriate discovery motion. This request was denied. Defendant pleaded guilty 17 days later to transporting methamphetamine and to possessing methamphetamine for sale and admitted arming enhancements as to both counts as well as five prior prison term allegations. After he was sentenced to five years in prison, he filed an appeal from the court's order denying his motions to quash and traverse the warrant and to suppress evidence and his request to file a discovery motion.

In a published opinion, the Court of Appeal held that Judge Fitzgerald's denial of defendant's request for an in camera review of the warrant affidavit violated the procedure set forth in *Hobbs, supra*, 7 Cal.4th 948. (*People v. Galland* (2004) 116 Cal.App.4th 489, 492–494 [10 Cal.Rptr.3d 350].) The Court of Appeal noted that the sealed portion of the warrant affidavit, which Hankins had retained, was not a part of the appellate record. From this omission, the Court of Appeal concluded that Judge Fitzgerald had not reviewed the affidavit. (*Id.* at p. 494.) The Court of Appeal conditionally reversed the judgment to allow the trial court to conduct an in camera review of the search warrant affidavit and to prepare a proper record of those proceedings. (*Id.* at p. 495.)

Judge Fitzgerald conducted the in camera review on June 29, 2004. By stipulation the parties agreed that Judge Marion had ordered a portion of the search warrant affidavit sealed and had directed Hankins, now an investigator for the district attorney's office, to retain this document in the Buena Park Police Department property room. They further agreed that Hankins would testify if called as a witness that he had transported the sealed portion of the original search warrant affidavit to the Buena Park Police Department property room for storage, that he had not altered or changed the original, and that he had brought the original sealed affidavit to court for the June 29 hearing. The court accepted the parties' stipulation and proceeded in chambers with Hankins.

Judge Fitzgerald stated that based on his in camera review of the documents, a "conversation" with Hankins, and Hankins's assurance that he had provided "the entirety of the package," the reasons for sealing the warrant affidavit remained and the defense was not entitled to any further disclosure. Judge Fitzgerald again denied defendant's motion to quash and traverse the search warrant. During the in camera hearing, Judge Fitzgerald ordered copies of the original documents to be sealed and placed in the court file and the original sealed documents to be returned "to the law enforcement agent."

On July 8, 2004, defendant filed a timely notice of appeal from the trial court's denial of his motions to quash or traverse the warrant and to suppress evidence. On February 28, 2005, the Court of Appeal received an affidavit from the clerk of the appellate division of the superior court. The clerk averred that the sealed portion of the original search warrant affidavit, the part Hankins had retained for storage at the Buena Park Police Department, was not in the court's file. The clerk further stated that a sergeant from the Buena Park Police Department had advised that the sealed portion of the original search warrant affidavit was "purged/destroyed." The Buena Park Police Department confirmed this information by letter dated March 2, 2005.

On March 9, 2005, the Court of Appeal received a five-page facsimile from the Orange County District Attorney's Office, which included what appeared to be an unsigned version of the entire warrant affidavit. Because the document included information that might identify a confidential informant, the Court of Appeal ordered the five-page facsimile sealed. A copy of the sealed facsimile was transmitted back to the superior court for it to determine whether this five-page facsimile was the same document the superior court had reviewed in camera on June 29, 2004. If the superior court were to authenticate the five-page facsimile, the court was to augment the appellate record and prepare a supplemental clerk's transcript.

On April 12, 2005, Judge Fitzgerald reviewed the five-page facsimile pursuant to the Court of Appeal's order and determined that it was in substance the same as the affidavit he had reviewed in camera on June 29, 2004. He also discovered "another piece of paper that was in another sealed envelope." This newly discovered piece of paper, according to the Court of Appeal, contains evidence relevant to the probable cause determination and is likely to reveal the identity of a confidential informant if made public. Without explaining the origin of this document, Judge Fitzgerald determined that the newly discovered document had been inadvertently omitted from the superior court file. Judge Fitzgerald ordered the court's file augmented with a supplemental clerk's transcript, "including this courts find [*sic*] and the sealed affidavit."

In a second published opinion, the Court of Appeal held that allowing the police to retain a portion of the original search warrant affidavit was contrary to state law, deprived defendant of an adequate appellate record, and violated his right to due process. The Court of Appeal reversed the judgment and remanded the matter to permit defendant to withdraw his guilty plea.

Subsequent to that decision, Judge Kazuharu Makino calendared the matter for the purpose of informing the parties that the Orange County Superior Court Clerk's Office had located a filed copy of the sealed materials that were considered by Judge Fitzgerald at the June 29, 2004, in camera hearing. The materials, although temporarily lost, had been in the possession of the court "all that time." When the defense claimed that there was still "a debate about what those materials are, given the history," Judge Makino declared that he was "not having any kind of hearing resolving anything."

### DISCUSSION

Evidence Code section 1041 codifies the common law privilege against disclosure of the identity of a confidential informant. Evidence Code section 1042, subdivision (b) states, in particular, that disclosure of an

informant's identity is not required to establish the legality of a search pursuant to a warrant. A corollary rule provides "that 'if disclosure of the contents of [the informant's] statement would tend to disclose the identity of the informer, the communication itself should come within the privilege.' " (*Hobbs, supra,* 7 Cal.4th at pp. 961–962.) "These codified privileges and decisional rules together comprise an exception to the statutory requirement that the contents of a search warrant, including any supporting affidavits setting forth the facts establishing probable cause for the search, become a public record once the warrant is executed." (*Id.* at p. 962; cf. Pen. Code, § 1534, subd. (a).) Instead, a court may order any identifying details to be redacted or, as in this case, a court may adopt "the procedure of *sealing* portions of a search warrant affidavit that relate facts or information which, if disclosed in the public portion of the affidavit, will reveal or tend to reveal a confidential informant's identity." (*Hobbs, supra,* at p. 963.)

██ When a defendant seeks to quash or traverse a warrant where a portion of the supporting affidavit has been sealed, the relevant materials are to be made available for in camera review by the trial court. (*Hobbs, supra,* 7 Cal.4th at p. 963; see Evid. Code, § 915, subd. (b).) The court should determine first whether there are sufficient grounds for maintaining the confidentiality of the informant's identity. If so, the court should then determine whether the sealing of the affidavit (or any portion thereof) "is necessary to avoid revealing the informant's identity." (*Hobbs, supra,* 7 Cal.4th at p. 972.) ██ Once the affidavit is found to have been properly sealed, the court should proceed to determine "whether, under the 'totality of the circumstances' presented in the search warrant affidavit and the oral testimony, if any, presented to the magistrate, there was 'a fair probability' that contraband or evidence of a crime would be found in the place searched pursuant to the warrant" (if the defendant has moved to quash the warrant) or "whether the defendant's general allegations of material misrepresentations or omissions are supported by the public and sealed portions of the search warrant affidavit, including any testimony offered at the in camera hearing" (if the defendant has moved to traverse the warrant). (*Id.* at pp. 975, 974.) The prosecutor may be present at the in camera hearing; the defendant and defense counsel are to be excluded unless the prosecutor elects to waive any objection to their presence. However, defense counsel should be afforded the opportunity to submit written questions, reasonable in length, which shall be asked by the trial judge of any witness called to testify at the proceeding. (*Id.* at p. 973.)

██ These procedures were "designed to strike a fair balance between the People's privilege to refuse disclosure of a confidential informant's identity and the defendant's limited discovery rights in connection with any challenge to the search warrant's validity." (*Hobbs, supra,* 7 Cal.4th at p. 964.) As we have noted, " 'there is a fundamental difference between a trial to adjudicate

guilt or innocence and a pretrial hearing to suppress evidence. The due process requirements for a hearing may be less elaborate and demanding than those at the trial proper.' " (*Id.* at p. 968.) Thus, " '[a] defendant's interest in availing himself of the exclusionary rule may, in exceptional circumstances, be subordinated to safety precautions necessary to encourage citizens to participate in law enforcement.' " (*Ibid.*) The "strong and legitimate interest in protecting the informant's identity" (*People v. Luttenberger* (1990) 50 Cal.3d 1, 19 [265 Cal.Rptr. 690, 784 P.2d 633]) derives from the need to protect the safety of the informant and the informant's family, the need to preserve the informant's usefulness in current and future investigations, and the need to assure others who are contemplating cooperation with law enforcement of their safety as well. (*McCray v. Illinois* (1967) 386 U.S. 300, 308–309 [18 L.Ed.2d 62, 87 S.Ct. 1056].)

In this case, the magistrate ordered the search warrant affidavit to be sealed, and the superior court reviewed the sealed affidavit in camera, ordered that it remain sealed, and denied defendant's motions to quash and traverse the warrant. Our review, however, does not encompass any of those rulings. The parties have asked us instead to decide where the original sealed warrant affidavit should be stored once the search warrant has been executed and what should happen to defendant's challenges to the warrant on appeal when the original sealed affidavit has been lost. Neither of these questions is answered in *Hobbs*, but *Hobbs* does inform our analysis of the important competing interests at stake.

## A

The Court of Appeal reasoned that the statutory scheme governing the issuance of a warrant (Pen. Code, §§ 1523–1541) " 'read as a whole' requires the magistrate to retain the entire search warrant affidavit when the warrant is issued or at the time the return is filed." This was so, the Court of Appeal continued, because an "affidavit" as used in section 1523 et seq. includes "the entire affidavit," regardless of whether part of it has been sealed, and is thus "a court record subject to the pertinent Government Code sections," including Government Code section 69846, which provides: "The clerk of the superior court shall safely keep or dispose of according to law all papers and records filed or deposited in any action or proceeding before the court."

■ Thus, as to papers or records filed or deposited in any action, the superior court may either "safely keep" them or "dispose of [them] according to law." (Gov. Code, § 69846.) Defendant argues that "[i]n this context, the term 'dispose' clearly refers to destruction" and that "[o]ne does not 'dispose' of documents by giving them to the police for safekeeping." ■ Certainly the destruction of court records, which is governed by Government Code

sections 68152 and 68153, is included within the meaning of "dispose" in Government Code section 69846. Section 68152 sets forth the retention periods for various categories of court records, including search warrants, which may not be destroyed until at least 10 years after the final disposition in a noncapital case. (Gov. Code, § 68152, subd. (j)(18).) After that period, section 68153 provides that such records "may be destroyed. Destruction shall be by shredding, burial, burning, erasure, obliteration, recycling, or other method approved by the court, except confidential and sealed records, which shall not be buried or recycled unless the text of the records is first obliterated."

█ However, a review of the Penal Code reveals that the destruction of court records under Government Code sections 68152 and 68153 is not the *only* way the clerk of court may "dispose" of papers and records filed or deposited in any action or proceeding "according to law." (Gov. Code, § 69846.) Penal Code section 1417.5 provides that 60 days after the final determination of a criminal action or proceeding, the clerk of court shall "dispose" of exhibits introduced or filed in the proceeding by releasing them to the person who was in lawful possession of the exhibits or to the person establishing title to or a right to possession of the exhibits. (Pen. Code, § 1417.5, subd. (b)(1), (2).) If that person fails to apply for return of the exhibit, the clerk of court is instructed to dispose of the item by transferring it to the appropriate county agency for sale (*id.*, § 1417.5, subd. (c)(2)) or, if the item is money or currency, by transferring it to the county treasurer with instructions to publish a public notice (*id.*, § 1420). Even before the action has been finally determined, the court may order an exhibit released to the appropriate party "upon stipulation of the parties or upon notice and motion" under specified conditions (*id.*, § 1417.2) or where the exhibit "poses a security, storage, or safety problem" (*id.*, § 1417.3). █ And, in a situation analogous to the current one, an application for and an order approving the interception of any wire or electronic communication "shall be sealed by the judge" and "[c]ustody of the applications and orders shall be where the judge orders." (*Id.*, § 629.66; see also *id.*, § 629.64 [custody of recordings of any intercepted wire or electronic communication "shall be where the judge orders"].)

█ As demonstrated by these examples, the statutory scheme contemplates that certain court records may, even prior to the final determination of the action, be retained in the custody of someone other than the clerk of court. Although the Penal Code does not explicitly identify the custodian for a sealed search warrant affidavit,[1] we note that the term "according to law" is

---

[1] The California Rules of Court do not provide an explicit answer, either. Although sealed records "must be securely filed and kept separate from the public file in the case" under rule 2.551(f) of the California Rules of Court, this rule does not apply to "records that are required

not limited to statutory law but encompasses decisional law as well. (Cf. *Estate of Ford* (2004) 32 Cal.4th 160, 173 [8 Cal.Rptr.3d 541, 82 P.3d 747] ["Evidence Code section 115 provides that the burden of proof in civil cases is a preponderance of the evidence '[e]xcept as otherwise provided by law.' The law providing for a higher standard of proof may include decisional law."].) For example, we have recognized that confidential law enforcement personnel files that are reviewed in camera by the court under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] may be retained by the custodian of those records instead of by the court, provided that the court makes an adequate record of what was reviewed. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228–1230 [114 Cal.Rptr.2d 482, 36 P.3d 21]; see also Cal. Rules of Court, rule 2.551(g); cf. *In re Waltreus* (1965) 62 Cal.2d 218, 223 [42 Cal.Rptr. 9, 397 P.2d 1001] [trial court need not retain documents reviewed by the court that "contain matters unrelated to the defendant's case whose disclosure would interfere with effective law enforcement"].) Similarly, to determine whether the law permits a sealed search warrant affidavit to be retained in the custody of an entity other than the court, we must balance the public's interest in preventing disclosure of the confidential informant's identity against the defendant's interest in maintaining the integrity of the record and in preserving that record for further judicial review. (Cf. *Hobbs, supra,* 7 Cal.4th at pp. 971–972.)

Defendant, like the Court of Appeal, contends that a search warrant affidavit must be filed with the clerk of the superior court at the earliest opportunity and must remain there until such time as the document is eligible to be destroyed. (See Gov. Code, § 68152, subd. (j)(18).) The People, on the other hand, argue that law enforcement should be permitted to seek an order allowing the original sealed search warrant affidavit to be retained at a location other than the court, as long as the court describes the materials reviewed with sufficient particularity to permit authentication of those materials in future proceedings.

We find that neither position strikes the appropriate balance of these important competing interests. Defendant's approach gives too little weight to the "strong and legitimate interest" (*People v. Luttenberger, supra,* 50 Cal.3d at p. 19) in securing the safety of the confidential informant and the likelihood that informants will be reluctant to cooperate with law enforcement if the confidentiality of their identities cannot be maintained. The People's

to be kept confidential by law" (Cal. Rules of Court, rule 2.550(a)(2)), such as "search warrant affidavits sealed under *People v. Hobbs*[, *supra*,] 7 Cal.4th 948." (Advisory Com. com., Cal. Rules of Court, rule 2.550.) Rule 2.585(b) provides that records examined by the court in a confidential in camera proceeding must be filed "under seal" but does not specify where those records must be kept. (See Cal. Rules of Court, rule 2.551(g); cf. Tenn. Rules Crim. Proc., rule 41(d) ["The magistrate shall prepare an original and two exact copies of each search warrant. The magistrate shall keep one copy as a part of his or her official records."].)

approach fails to consider the possibility that the court, in certain circumstances, may be a more secure location than a law enforcement agency for maintaining the integrity of the record and preserving it for further judicial review. As the Court of Appeal noted, a law enforcement agency (or its officers) should not be allowed to retain court documents "simply because the agency prefers to maintain custody of documents relating to the identity of a confidential informant." In the absence of a particularized showing, we must presume that the court clerk's office can safeguard the sealed documents in its possession. (*People v. Martinez* (2000) 22 Cal.4th 106, 125 [91 Cal.Rptr.2d 687, 990 P.2d 563] [citing Evid. Code, § 664]; *People v. Smith* (1965) 234 Cal.App.2d 404, 407 [44 Cal.Rptr. 430].) By the same token, though, law enforcement should not be put to the choice of either risking the safety of a confidential informant or refraining from the prosecution of the crimes uncovered by the informant where security procedures for sealed documents at the clerk's office are demonstrably inadequate.

 In our view, a sealed search warrant affidavit, like search warrant affidavits generally, should ordinarily be part of the court record that is maintained at the court. Such a rule minimizes the potential for tampering with the record and eliminates the need for time-consuming and cumbersome record-authentication procedures. (E.g., *People v. Martinez* (2005) 132 Cal.App.4th 233, 239 [33 Cal.Rptr.3d 328].) However, a sealed search warrant affidavit may be retained by the law enforcement agency upon a showing (1) that disclosure of the information would impair further investigation of criminal conduct or endanger the safety of the confidential informant; (2) that security procedures at the court clerk's office governing a sealed search warrant affidavit are inadequate to protect the affidavit against disclosure to unauthorized persons; (3) that security procedures at the law enforcement agency or other entity are sufficient to protect the affidavit against disclosure to unauthorized persons; (4) that the law enforcement agency or other entity has procedures to ensure that the affidavit is retained for 10 years after final disposition of the noncapital case, permanently in a capital case, or until further order of the court (see Gov. Code, § 68152, subd. (j)(18)), so as to protect the defendant's right to meaningful judicial review; and (5) that the magistrate has made a sufficient record of the documents that were reviewed, including the sealed materials, so as to permit identification of the original sealed affidavit in future proceedings or to permit reconstruction of the affidavit, if necessary. Defendant is correct that "there is nothing inconsistent with the preservation of confidentiality and the retention of confidential information in sealed court files"—but that is so only in the absence of a showing that court procedures concerning sealed affidavits are inadequate to protect the affidavit against disclosure to unauthorized persons. Where the record shows that court procedures are inadequate to protect the informant's identity—and that the law enforcement agency can protect the informant's

identity and the integrity of the sealed affidavit—there is nothing in the Penal Code or in the Constitution to bar the law enforcement agency from retaining custody of the original sealed affidavit.

The circumstances in this case do not leave one with great confidence in either the clerk's office or in the police department. Although the superior court made a copy of the sealed search warrant affidavit following the June 29, 2004, hearing on defendant's motions challenging the warrant, the clerk's office was unaware of its whereabouts for a significant period of time, and the record does not reflect what security procedures (if any) governed the sealed affidavit during that period. The police department did maintain the original affidavit in a secure location, yet failed to ensure that the affidavit was retained for the requisite period or to prevent its destruction. There is, of course, the possibility of error or negligence in every human endeavor. Nonetheless, it may prove fruitful for all involved parties to consider how confidential and sensitive documents under seal might best be maintained with sufficient security and retained for the requisite length of time. In particular, courts should endeavor to promptly address and resolve security concerns identified by the People so that those confidential records may be maintained securely at the court. This problem may merit consideration as a statewide policy matter, and we suggest to the Judicial Council that it establish a task force for that purpose.

Regardless of what eventually occurred, however, the magistrate here erred in permitting the police department to retain custody of the original sealed search warrant affidavit without a showing that the clerk's office was unable to maintain the sealed affidavit with adequate security and that the police department had adequate procedures to maintain the sealed affidavit in a secure location and to retain the affidavit for the requisite period of time, and without describing the affidavit it reviewed with sufficient specificity so that a reviewing court in a future proceeding could have confidence it was examining the same document.

We do not purport to exhaust the methods by which a magistrate may create a record of a sealed search warrant affidavit that is not retained by the court, but it may prove helpful for the magistrate to consider describing the sealed document's general physical characteristics (i.e., the number of pages or paragraphs), marking each page of the affidavit with the magistrate's initials, directing the People to file a redacted version of the sealed affidavit, or other methods to facilitate identification or reconstruction of the sealed document in future proceedings. (Cf. *People v. Mooc, supra,* 26 Cal.4th at p. 1229.)

## B

Defendant, like the Court of Appeal, contends that the error that led to the destruction of the original sealed search warrant affidavit rendered meaningful appellate review of the warrant impossible and that the due process violation requires suppression of the evidence seized under the warrant. We disagree. The record reconstructed by the superior court is sufficient to permit meaningful appellate review of the warrant.

 " 'A defendant in a criminal case is entitled to an appellate record adequate to permit "meaningful appellate review." ' " (*People v. Blair* (2005) 36 Cal.4th 686, 756 [31 Cal.Rptr.3d 485, 115 P.3d 1145].) In this case, defendant seeks review of the validity of the search warrant, which was supported by an affidavit that is now missing. The absence of an affidavit to support an executed search warrant, however, does not invalidate the warrant when "other evidence may be presented to establish the fact that an affidavit was presented, as well as its contents." (*U.S. v. Lambert* (11th Cir. 1989) 887 F.2d 1568, 1571–1572; accord, *U.S. v. Gibbs* (5th Cir. 2005) 421 F.3d 352, 356 [quoting *Lambert*]; *U.S. v. Towne* (9th Cir. 1993) 997 F.2d 537, 543 [same]; *U.S. v. Campbell* (E.D.Mich. 2007) 525 F.Supp.2d 891, 907 [same]; see generally *State v. Raflik* (2001) 248 Wis.2d 593 [636 N.W.2d 690, 697] ["most federal courts have not seen fit to suppress evidence because of a failure to record some or all of the warrant application"].) " 'The rule that emerges is that reversal is indicated only where critical evidence or a substantial part of a [record] is irretrievably lost or destroyed, and there is no alternative way to provide an adequate record so that the appellate court may pass upon the question sought to be raised.' " (*People v. Curry* (1985) 165 Cal.App.3d 349, 354 [211 Cal.Rptr. 590]; see also *People v. Holloway* (1990) 50 Cal.3d 1098, 1116 [269 Cal.Rptr. 530, 790 P.2d 1327], disapproved on other grounds in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1 [38 Cal.Rptr.2d 394, 889 P.2d 588].)

The superior court here determined that the record was adequate. We review the superior court's findings regarding the reconstruction of the original search warrant affidavit, which are essentially factual, under a deferential substantial evidence standard. We then independently determine whether the record, as reconstructed and settled by the trial court, is adequate to allow the appeal to proceed meaningfully. (*People v. Osband* (1996) 13 Cal.4th 622, 662 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *People v. Clark* (1993) 5 Cal.4th 950, 1011 [22 Cal.Rptr.2d 689, 857 P.2d 1099] ["This court has repeatedly recognized that settlement of the record is primarily a question of fact to be resolved by the trial court."].)

On April 12, 2005, the superior court found that the five-page unsigned document the Court of Appeal had obtained from the Orange County District Attorney's Office was the same in content as the search warrant affidavit it had reviewed on June 29, 2004. The superior court's own recollection constitutes substantial evidence that the content of the two documents was the same. (*People v. Mooc, supra*, 26 Cal.4th at p. 1231; accord, *State v. Raflik, supra*, 636 N.W.2d at pp. 699, 701.)

Defendant does not challenge the superior court's finding that the five-page document it reviewed on April 12, 2005, was the same as the affidavit it had reviewed on June 29, 2004, when it denied his motion to suppress. He argues instead that the record is inadequate because the critical issue is what document the *magistrate* reviewed before issuing the search warrant, and the magistrate has no recollection of reviewing or signing this search warrant and would be unable to say whether the affidavit the superior court reviewed on April 12, 2005, is the same in substance as the one he reviewed on August 9, 2001.

Detective Hankins, however, *did* have such a recollection. According to the parties' stipulation, Hankins would have testified that the sealed affidavit the superior court reviewed on June 29, 2004, was "the exact sealed portion of the affidavit from the time in 2001," that the affidavit had been stored at the Buena Park Police Department in the interim, and that "[i]t has not been altered or changed in any way." Hankins's testimony, which was credited by the superior court, provides substantial evidence that the sealed affidavit was the same affidavit presented to the magistrate in support of the warrant. (See *People v. Hawthorne* (1992) 4 Cal.4th 43, 64 [14 Cal.Rptr.2d 133, 841 P.2d 118] ["Because defense counsel were not present during relevant events, their failure to contribute to the settled statement is both understandable and without significance to its reliability."]; accord, *U.S. v. Gibbs, supra*, 421 F.3d at p. 359 [relying on the testimony of a sheriff's deputy that at least one drug buy was included in the search warrant affidavit, now missing, that was submitted to the issuing judge]; *U.S. v. Towne, supra*, 997 F.2d at p. 539 [relying on police officer's testimony that an attachment to a pleading was identical to the search warrant's missing attachment]; *Nutt v. State* (1973) 16 Md.App. 695 [299 A.2d 468, 470] [relying on officer's testimony that copy of search warrant affidavit was identical to the missing original].) Indeed, "there is no reason to think that extrinsic evidence cannot be considered to establish the circumstances under which a warrant was issued and the nature of the documents relied upon in authorizing a search, insofar as such matters are deemed relevant to the constitutional inquiry." (*U.S. v. Towne, supra*, 997 F.2d at p. 542; accord, *People v. Wright* (1990) 52 Cal.3d 367, 391–393 [276 Cal.Rptr. 731, 802 P.2d 221] [relying on extrinsic evidence to establish the contents of an affidavit where the original affidavit in support of the arrest warrant had been destroyed by the clerk's office]; cf. *U.S. v. Pratt* (11th Cir.

2006) 438 F.3d 1264, 1266 ["We hold that the Fourth Amendment does not prohibit the use of other evidence to establish the existence and the contents of a lost search warrant."].)

 In concluding that the record was insufficient to enable meaningful appellate review, the Court of Appeal did not directly confront the basis for the superior court's finding that the sealed affidavit it reviewed on June 29, 2004, was the same affidavit the magistrate had reviewed prior to issuing the warrant, nor did it challenge the basis for the superior court's finding that the five-page document was the same in content as the sealed affidavit the superior court had reviewed on June 29, 2004. Indeed, the Court of Appeal did not even identify what standard of review it was applying before arriving at its conclusion that "there is good cause to doubt the authenticity of the confidential attachment in the appellate record." The Court of Appeal focused instead on its finding that "at every procedural juncture the trial court's handling of the warrant affidavit invited error and confusion," from the moment Hankins was allowed to retain "the crucial part of the warrant affidavit," to the superior court's failure initially to review the affidavit in camera prior to ruling on defendant's motions, and finally to the superior court's "subsequent and belated review, which yielded an entirely new page to add to [the sealed materials]." Although the decision to allow the police to retain custody of the original sealed search warrant affidavit was error (as we have discussed above), and although the superior court's failure to review the sealed warrant affidavit at the initial hearing on defendant's motions challenging the warrant was error as well (see *People v. Galland, supra,* 116 Cal.App.4th at pp. 492–494) and the police department's subsequent destruction of the sealed warrant affidavit was surely regrettable, the question on appeal is whether the reconstructed record is nonetheless sufficient to permit appellate review of the warrant. The superior court found that the reconstructed record—i.e., the unsigned five-page document—was identical in substance to the lost affidavit, and that finding is supported by substantial evidence. (*People v. Barnard* (1982) 138 Cal.App.3d 400, 409 [188 Cal.Rptr. 176].)[2]

---

[2] The Court of Appeal also intimated that the passage of time had rendered the reconstruction of the record "too far attenuated from the magistrate's determination of probable cause to serve as a legitimate basis for any decision on the warrant's validity." But, as we have previously held, "[t]ime alone . . . is not the dispositive consideration in evaluating whether a reconstructed record affords meaningful appellate review. The nature of the issue, the amount of the record reconstructed, and the means available to assist the process are all important in determining the reliability of any substitute for a contemporaneous verbatim account." (*People v. Hawthorne, supra,* 4 Cal.4th at p. 64.) The current record does not compel a finding that the passage of time has rendered reconstruction of the affidavit or other record-settlement procedures impossible.

We share the Court of Appeal's concern over the superior court's discovery at the April 12, 2005, hearing of " 'another piece of paper that was in another sealed envelope,' " that has relevance to the determination of probable cause, and that "had been inadvertently omitted from the superior court file" but whose origin was unknown, but the failure to identify this additional document appears to be directly attributable to the very limited remand ordered by the Court of Appeal itself. When the Court of Appeal realized that the sealed warrant affidavit was missing from the record, the proper procedure would have been to remand the case to the superior court with directions to hold a hearing to reconstruct or settle the record as to the missing search warrant affidavit and augment the record accordingly. (See *People v. Mooc, supra,* 26 Cal.4th at p. 1231; *People v. Martinez, supra,* 132 Cal.App.4th at p. 239; see also *People v. Osband, supra,* 13 Cal.4th at p. 661.) The Court of Appeal did order a remand, but only for a very narrow purpose: "to review the [five-page document] to determine if it is the same affidavit reviewed by the court on June 29, 2004. If the superior court determines the sealed document is the same affidavit it reviewed on June 29, 2004, the superior court is ordered to augment the record and prepare a supplemental Clerk's Transcript to include the sealed affidavit." Thus, the reason the superior court did not identify the significance or provenance of the additional piece of paper in a separate sealed envelope is that the Court of Appeal never instructed the superior court to do so.

We are concerned as well that the Court of Appeal provided no notice to the parties of its remand to the superior court or of its receipt of the augmented record, nor did it otherwise afford the parties an opportunity to participate in the record-settlement process. (See Cal. Rules of Court, rules 8.155(d), 8.340(c).) However, we need not decide the precise effect of the failure to provide notice to the parties of the record-settlement process or the precise effect of the discovery of the unidentified additional piece of paper described above for it appears that, subsequent to the issuance of the Court of Appeal's opinion, the superior court was able to locate the filed copy of the sealed search warrant affidavit in the clerk's office. It therefore seems most prudent to remand the matter to enable the superior court to conduct a full hearing to reconstruct or settle the record as to the missing original sealed search warrant affidavit. At that hearing, the superior court may consider all relevant matters, including the filed copy of the sealed affidavit as well as the five-page document and the additional piece of paper the superior court viewed at the prior hearing, and, if necessary, inquire into the circumstances under which the original affidavit was purged. The present circumstances, however, do not justify a finding that defendant's right to meaningful appellate review has been irrevocably compromised.

## Disposition

The judgment of the Court of Appeal is reversed and the matter is remanded for proceedings consistent with this opinion.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

Respondent's petition for a rehearing was denied February 11, 2009. Werdegar, J., did not participate therein.